In the Matter of the Estate of ORIN AKIN, Deceased.

Surrogate's Court, Rensselaer County, July 7, 1927.

Surrogate's Court — discovery proceedings — court has power, under Surrogate's Court Act, §§ 205, 206, to make decree concerning property though answer not interposed — gifts — gift by father to son, of money in bank, not established — money withdrawn on alleged order to bank must be returned to estate of father.

A surrogate has power, under sections 205 and 206 of the Surrogate's Court Act, to enter a decree in discovery proceedings instituted before him, in which the claim of the respondent is litigated, notwithstanding the fact that the respondent against whom the proceedings are instituted does not file an answer.

The right of the respondent, a son of the intestate, to retain money withdrawn from a deposit of intestate, is not established. It appears that a few days before the death of the intestate, he and his son came to the bank to withdraw money and at that time the intestate was unable to write his name, apparently due to physical weakness, and the bank then discouraged the plan to have the money transferred to the joint names of the intestate and his son. A few days later, and three days prior to the death of intestate, the son brought two orders to the bank, apparently executed by the intestate, and withdrew a part of the money and transferred the balance to the joint names of the son and the intestate. On the next day the son returned to the bank and transferred the joint account to his own individual name. There is grave doubt as to the validity of the signature of the intestate to the orders on which the account was transferred, for it appears that while the intestate was unable to write his name about two weeks prior to his death, the signatures to the orders in question, apparently made three days prior to his death, appeared to have been made by a firm hand and showed very little resemblance to the standard signature of the decedent on file in the bank.

But whether or not the signatures were genuine, the evidence does not show that the intestate gave the money to the son, since his contention is supported only by himself and his wife, and since it appears that at the time the alleged orders were signed there were other people in the house where the intestate was living, who could have corroborated the testimony of the respondent and his wife. The evidence to support a gift is unsatisfactory, and it is directed that the amount withdrawn, and apparently transferred to the son, be returned to the estate.

PROCEEDING under sections 205 and 206 of the Surrogate's Court Act to discover property belonging to the estate of the decedent within the possession of the respondent, or which was obtained by respondent in the lifetime of the decedent, and which property is now withheld from the administrator.

*H. P. Humphrey*, for Arthur G. Atwood, administrator.

*Taylor & Taylor*, for Nette Akin, respondent.

WAGER, S. Upon the various hearings in the matter the respondent and his wife were examined as well as several witnesses called by the administrator and several witnesses called by the respondent in his behalf. The respondent did not interpose any answer to the petition; and he now claims that by reason of the fact that no answer was interposed by him, the Surrogate's Court is without power to make any decree concerning the delivery of the property, or the proceeds, unless it conclusively appears as a matter of law that the claim of title by the respondent is not well founded. Counsel for the respondent cites numerous authorities on this proposition and urges strenuously that the situation is such that this court must dismiss the proceedings upon the ground that it has no authority to make any valid decree concerning the property in question.

The leading authority on this question is found in *Matter of Hyams* (237 N. Y. 211), but since this decision was handed down by the Court of Appeals the Legislature has amended sections 205 and 206 of the Surrogate's Court Act (Laws of 1924, chap. 100), apparently for the purpose of meeting the defects that existed in the law at the time *Matter of Hyams* was decided. These sections as they now stand authorize the Surrogate's Court to decree and make " any determination which a court of equity might decree in following trust property or funds."

I am of the opinion, therefore, that full authority is vested in the Surrogate's Court to make a decree in this matter. In fact, all the questions that arose under the petition were litigated by both parties, and it would seem that the amendment in question was inserted in the law for the useful purpose of permitting the Surrogate's Court to try out any matter under these sections where it

related entirely to an estate of a decedent. The objection, therefore, made by the respondent to the jurisdiction of this court is overruled.

As to the merits of the respective questions in this proceeding: Orin Akin, the decedent, was a retired farmer upwards of eighty-six years of age, having several children and grandchildren. His wife was dead. In the latter part of October, 1926, he went to live with the respondent, his son Nette Akin, on the latter's farm near Valley Falls in Rensselaer county, and continued to reside with the respondent until his death on the 19th day of February, 1927. He paid board to the respondent's wife. On the 29th day of January, 1927, the decedent and his son Nette, and the latter's wife, went to Troy and at the Manufacturers National Bank obtained the bank pass book of the National City Bank of Troy in which the decedent had a deposit. They then went to the latter bank, and interest was credited on the deposit, which then showed a total of $4,570.08. The decedent desired to withdraw $500 of said deposit on that day, but was unable to sign his name as he was too shaky, and thereupon made his mark to an order for the withdrawal of the said $500. He stated to the bank officials that " he was getting along in years " and it was difficult for him to come to Troy and that he desired to have his son Nette's name placed on the account so that either could draw the deposit. The bank officials discouraged that idea and it was not done. At that time the decedent was in very feeble health, shaky and trembly, and it was stated that one of the causes thereof was the fact that the automobile had left the road on the way to Troy shaking the decedent up and making him nervous. On the fifteenth day of February following, Nette Akin, the respondent, appeared at the bank with the book and a home-made order upon this account which the bank refused to recognize, and at that time he stated to the bank officials that it was necessary to use some money immediately for his father's sickness and expenses and that $700 was required. The bank officials prepared two orders for the respondent, one for $700 and the other for the entire balance of $4,070.08. The respondent left, and on the next day he appeared at the bank with the disputed order in question, apparently signed by the decedent, for the full amount of the deposit. This order was honored by the bank and the respondent Nette Akin was given the entire fund of $4,070.08. Seven hundred dollars was placed by the respondent in a checking account and $3,370.08 was placed in a joint account to the credit of the decedent and the respondent Nette Akin, either to draw. This was on February sixteenth. On February seventeenth the respondent again appeared at the bank, changed the joint account to his own individual name, with-

drawing, however, $775 and leaving a balance of $2,595.08 in an interest account.

A great deal of testimony was taken concerning the genuineness of the decedent's signature to this order of February fifteenth which was honored by the bank, and whereby the whole deposit of $4,070.08 was transferred to the possession of the respondent. During this week the decedent Orin Akin was a very sick man, according to the testimony of the doctor who was called upon to attend him on February twelfth and who made visits every day to the decedent except on the fourteenth of February. The decedent's lungs were very much congested, his heart was dilated and he was in a very feeble condition. In the household of the respondent Nette Akin at this time was another son, Humphrey Akin, a nurse or attendant, Mrs. Stevens, who was there practically every day during the day, and also various other members of the family who called at different times. Humphrey Akin testified that he did not see his father out of the bedroom after Sunday night and did not see him sit up after Tuesday of that week. The doctor testified that on the fifteenth the decedent was a very sick man. In the early part of the week in attempting to walk the decedent staggered so he knocked things off the table; in other words, the whole testimony adduced in behalf of the petitioner and in behalf of the respondent showed that the old gentleman was getting weaker and weaker, practically dying during that week. The respondent claims that his father signed the disputed order on the fifteenth while sitting at the sitting room table; that no one else was present except the decedent, the respondent Nette Akin and the latter's wife. The alleged signature of the decedent appears to have been made by a firm legible hand, very much different from the standard signature of the decedent made in November, 1926. Handwriting experts were called by both parties, who testified favorably to the ones calling them.

But regardless of the genuineness of the signature of the decedent in question, I am of the opinion that the circumstances here disclosed are such that the respondent has failed to establish as a matter of law or in fact that a gift of this money was made by the decedent to him. On the first visit to the bank on January twenty-ninth the decedent asked that the respondent's name be placed on the book for the purpose of conveniently withdrawing the account as he was an old man and could not come to the city very well. At this time the bank officials discouraged him and prevailed upon the decedent not to do this; but on the fourteenth of February following, and on the fifteenth when the son alone appeared, the bank officials without inquiring any further and upon the mere statement

of the respondent that the decedent was sick and needed money for his expenses, permitted the son to withdraw the whole account and to transfer it to his own name. The order permitting this withdrawal was not witnessed by any one, although the doctor, the nurse, Mrs. Stevens, and a son, Humphrey Akin, were in and about the house where the decedent was during the day in question. The bank officials used good care on January twenty-ninth but failed to use the same precaution to safeguard the decedent's money on February fifteenth. They took the say so of the son Nette Akin in making this transfer and an order signed by a very sick man, apparently written by a firm hand, when a couple of weeks before he could not even write his name.

The fact that this bank book was readily accessible to the respondent and his wife, that secrecy was observed in reference to the signing of this order, if it was ever signed by the decedent, the great opportunity for the respondent to take advantage of his dying father, all stamp the situation with such questionableness as to warrant the court in deciding that this money was never lawfully obtained from the possession of the decedent. There is no corroboration of the respondent's testimony other than his wife, and to permit their testimony to sustain a gift of the money in question would open the door to such an extent that the bank books and savings of every old person would not be safe if they were living in a like situation as the decedent lived. There is nothing to support the gift of this money other than the testimony of Nette Akin and his wife and this questionable order. Both the respondent and his wife are vitally interested in the result of this litigation. There is no other corroboration, although the opportunity to have it, if the gift was actually made by the decedent, was readily available. The public good requires clear and satisfactory evidence in such cases for the purpose of preventing fraud and perjury.

I am, therefore, of the opinion that this deposit of $4,070.08 was not rightfully given to the respondent, that there is such a grave doubt as to the genuineness of the decedent's signature to the order in question that a decree should be made awarding this money to the estate.

A decree, therefore, is directed for payment of the balance now on deposit in the National City Bank in the name of Nette Akin of $2,505.08 to the petitioner, and that a trust be imposed upon the share of Nette Akin in his father's estate for the balance of the fund of $4,070.08, unless he clearly shows upon the judicial settlement of the estate that this balance or a portion thereof was expended for his father's benefit.